UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JAI FU CHEN, GUANG QING LIN, and         :
MEI DI CHEN,                              :
                          Plaintiffs,     :
                                          :
            -v-                           :            14-CV-580 (JPO)
                                          :
NEW 9TH AVE PEARL ON THE SUSHI INC.       :
(d/b/a ARU SUSHI), XIAO QING SHI, ABACE   :            OPINION AND ORDER
SUSHI, INC., and PING ZHU YU,             :
                          Defendants.     :
                                          :
----------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

        Plaintiffs, Jai Fu Chen ("Fu Chen"), Guang Qing Lin ("Qing Lin"), and Mei Di Chen

("Di Chen"), bring this action against New 9th Ave Pearl on the Sushi, Inc. ("New 9th"), which

did business as Aru Sushi; Abace Sushi Inc. ("Abace Sushi"); Xiao Qing Shi ("Qing Shi"), the

former owner and operator of Aru Sushi; and Ping Zhu Yu ("Zhu Yu"), the owner of Abace

Sushi.  Plaintiffs allege causes of action arising under the Fair Labor Standards Act ("FLSA"),

29 U.S.C. § 201 *et seq.*, the New York Labor Law ("NYLL") §§ 190 *et seq.*, 650 *et seq.*, and the

spread-of-hours wage orders of the New York Commissioner of Labor ("Spread of Hours

Orders"), 12 N.Y.C.R.R. §§ 137-1.7, 3.11.  Defendants move for summary judgment under

Federal Rule of Civil Procedure 56.  For the reasons that follow, Defendants' motion is denied.

I.      **Background**

        Aru Sushi was a restaurant on Ninth Avenue in Manhattan that did business from 2009

until 2013.  (Dkt. No. 32, Declaration of Xiao Qing Shi ¶¶ 3, 18 ("Shi Decl.").)  Qing Shi kept

daily records of sales at the restaurant and did the accounting for the restaurant.  (*Id.* Ex. A

(citing Qing Shi deposition ("Shi Depo.") at 82:24–83:10; 87:5–87:23).)  The corporate tax

returns of Aru Sushi from 2009 to 2013 never surpassed $500,000 in reported gross sales.  (*Id.* Ex B.)  But, according to Di Chen, "Aru Sushi generated revenue in the following manner: twenty daily orders for take-out, three hundred daily individuals dining-in, and forty-five (45) daily delivery orders per delivery worker averaging $25 per delivery order, or approximately $378,000.00 gross sales just for delivery orders per delivery worker for a 365 day year during the period [Di Chen] worked there."  (Declaration of Mei Di Chen ¶ 7 ("Di Chen Decl.").)  And "for any given day, there would be at least two (2) delivery workers working at the restaurant," (*id.*), and 300 dine-in patrons, (*id.* ¶ 9).

In December 2013, Aru Sushi sold all of its assets to Abace Sushi for $40,000.  When she sold the business, Qing Shi "discarded most of the accounting records and documents."  (Shi Decl. Ex. A (citing Shi Depo. 82:24–83:10; 87:5–87:23).)  Still, after the close of discovery in this case, "she was able to locate the sales receipts and print-out summaries of the daily credit card sales at the restaurant . . . for two separate months, November 2011 and December 2013."  (*Id.* ¶ 5.)  The records for those two months, with only minor discrepancies, match up with the tax returns for those years.  (Dkt No. 34, Defendants' Memorandum of Law, at 9–12.)

In the contract of sale, dated December 30, 2013, the transacting parties agreed that "the transferee [Abace Sushi] assumes none of such liabilities of the transferor [Aru Sushi]," and that the "[t]ransferor agrees to and does hereby, indemnify and hold harmless the transferee against and from all such liabilities of the transferor, including legal expenses necessary to defend such claims."  (*Id.* Ex. J. ¶ 22.)  But, according to Plaintiffs, Aru Sushi and Abace Sushi "operated essentially the same restaurant business[,] employing the same personnel, using the same equipment, and using a similar menu."  (Di Chen Decl. ¶ 8.)

According to the Amended Complaint, Fu Chen was a delivery worker for Aru Sushi from about November 9, 2010, to December 26, 2013, and for Abace Sushi for some period of time after that.[1]  (Dkt. No. 9, Amended Complaint ¶ 12.)  Throughout that time, his regular schedule was 11:00 AM to 10:00 PM on Tuesdays, Wednesdays, Thursdays, Fridays, and Sundays, and 4:00 PM to 10:00 PM on Mondays and Saturdays.  (*Id.* ¶ 15.)  Fu Chen did not get breaks during work (*id.* ¶ 17), and he did not get paid more if he worked longer hours than usual (*id.* ¶ 16).

According to the Amended Complaint, Qing Lin was a delivery worker at Aru Sushi from about January 2, 2012, to December 26, 2013, and held the same position at Abace Sushi from about December 27, 2013, to February 1, 2014.  (*Id.* ¶ 21.)  Qing Lin's schedule throughout all of his employment was 12:00 PM to 11:00 PM on Mondays, Wednesdays, Thursdays, and Fridays, and 4:00 PM to 11:00 PM on Tuesdays and Sundays.  (*Id.* ¶ 21.)  Qing Lin did not get breaks during work (*id.* ¶ 23), and did not get paid more if he worked longer hours than usual (*id.* ¶ 22).  After filing this lawsuit, Qing Lin "was verbally abused, and then fired, in retaliation for the present lawsuit by Defendant Xiao Qing Shi."  (*Id.* ¶ 24.)  "[Qing Lin] was not paid for work done for four weeks at firing, and [the pay] is still outstanding."  (*Id.* ¶ 25.)

According to the Amended Complaint, Di Chen was a delivery worker at Aru Sushi from approximately April 23, 2013, to December 26, 2013, and at Abace Sushi from approximately December 27, 2013, to January 14, 2014.  (*Id.* ¶ 26.)  Throughout that time, his regular schedule was 11:00 AM to 10:00 PM on Tuesdays, Wednesdays, Thursdays, Fridays, and Sundays; and

---

[1] The Amended Complaint states that Fu Chen was employed at Abace Sushi "from approximately December 27, 2013 to April 22, 2013." (Amended Complaint, ¶ 12.)  But the year in the latter date is an error: it cannot be April 22, 2013, because Fu Chen began his employment at Abace in December 2013, and it cannot be April 22, 2014, because the Amended Complaint was filed on April 11, 2014.  (*Id.* at 13.)  The discrepancy is immaterial, however, because the precise period of Fu Chen's employment at Abace will be resolved at trial.

4:00 PM to 10:00 PM on Mondays and Saturdays.  (*Id.* ¶ 29.)  Di Chen did not get breaks during

work (*id.* ¶ 31), and did not get paid more if he worked longer hours than usual (*id.* ¶ 30).

## II.    Discussion

Defendants move for summary judgment on three grounds.  First, they contend that a

reasonable jury could not find that Aru Sushi was an "enterprise" within the meaning of the

FLSA because Aru Sushi never grossed more than $500,000 per year.[2]  Second, they argue that a

reasonable jury could not find that they retaliated against Qing Lin because they had terminated

his employment before they learned of the instant lawsuit.  Finally, they contend that Plaintiffs

cannot show successor liability for Aru Sushi.  Defendants do not move for summary judgment

on their state-law claims; instead, they ask that this Court decline to exercise supplemental

jurisdiction over those claims in the event that the federal claims are dismissed.

### A.    Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A fact is

material if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is genuine if, considering the record as a

whole, a rational jury could find in favor of the non-moving party, *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The initial burden of a movant on summary judgment is to provide evidence on each

element of her claim or defense illustrating her entitlement to relief.  *Vermont Teddy Bear Co. v.*

*1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  If the movant meets this initial burden

---

[2] Defendants also move for summary judgment on the ground that Plaintiffs cannot allege individual coverage under the FLSA.  Because Plaintiffs' case survives summary judgment on enterprise coverage, it need not reach Defendants' argument on individual coverage.

of production, the non-moving party must then identify specific facts demonstrating a genuine

issue for trial.  The court views all evidence "in the light most favorable to the nonmoving party

and draw[s] all reasonable inferences in its favor."  *Anderson*, 447 U.S. at 250–51.  A motion for

summary judgment may be granted only if "no reasonable trier of fact could find in favor of the

nonmoving party."  *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks

omitted).  But the non-moving party cannot rely upon mere "conclusory statements, conjecture,

or speculation" to meet its burden.  *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)

(citing, *inter alia*, *Matsushita*, 475 U.S. at 587).

## B.    Enterprise Coverage[3]

The minimum wage and overtime provisions of the FLSA apply to employees who are

either (1) "engaged in commerce or in the production of goods for commerce," or (2) "employed

in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. §

206(a) and § 207(a)(1).  The two categories are commonly referred to as "individual" coverage

---

[3] Courts in the Second Circuit have generally held that the enterprise coverage requirement is an
issue that goes to the merits of a plaintiff's claim, not an issue of the Court's jurisdiction.  *See Jia
Hu Qian v. Siew Foong Hui*, No. 11-CV-5584 (CM), 2012 WL 1948820, at *2 (S.D.N.Y. May
30, 2012) ("The question of whether or not Defendants actually are an 'enterprise engaged in
commerce' within the meaning of 29 U.S.C. § 203(s)(1) is an issue that goes to the merits of
Plaintiff's claims rather than the Court's subject matter jurisdiction." (quoting *Velez v. Vassallo*,
203 F. Supp. 2d 312, 332 (S.D.N.Y. 2002) (brackets and internal quotation marks omitted)));
*Monterossa v. Martinez Rest. Corp.*, No. 11-CV-3689 (JMF), 2012 WL 3890212, at *3
(S.D.N.Y. Sept. 7, 2012) (same); *Benitez v. F & V Car Wash, Inc.*, No. 11-CV-1857 (DLI)
(SMG), 2012 WL 1414879, at *1 (E.D.N.Y. Apr. 24, 2012) ("[T]he question of whether a
defendant qualifies as an enterprise under the FLSA is not a jurisdictional issue, but an element
that a plaintiff must establish in order to prove liability." (collecting cases)); *Romero v. Jocorena
Bakery, Inc.*, No. 09-CV-5402 (SJF) (ETB), 2010 WL 4781110, at *3 (E.D.N.Y. Nov. 23, 2010)
("While plaintiffs will have to ultimately prove that defendants grossed more than $500,000 in
annual sales in order to be successful on their FLSA claims, the Court 'has jurisdiction over
plaintiffs' FLSA claims irrespective of whether plaintiffs can ultimately prevail on the merits.'"
(quoting *Padilla v. Manlapaz*, 643 F. Supp. 2d 298, 301 (E.D.N.Y. 2009) (brackets omitted)));
*Padilla*, 643 F. Supp. 2d at 301 ("[T]here is nothing in the text of the FLSA that expresses a
congressional intent to make the $500,000 requirement jurisdictional in nature.").

and "enterprise" coverage. *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 342 (E.D.N.Y. 2014). An "enterprise" is "engaged in commerce" if its "gross annual revenues" exceed $500,000 and the business "has employees handling . . . goods or materials that have been moved in or produced for commerce by any persons." *Velez v. Vassallo*, 203 F. Supp. 2d 312, 327–28 (S.D.N.Y. 2002) (quoting 29 U.S.C. § 203(s)(1)).[4]

Defendants contend that no reasonable juror could conclude that Aru Sushi grossed more than $500,000 in any year and, therefore, that no reasonable juror could find that it was covered by the FLSA. But Plaintiffs have submitted evidence suggesting that the volume of business that Defendants suggest they did is inconsistent with the facts observed by Plaintiffs as delivery workers. The mere fact that Defendants have produced tax returns—some of which, at least as initially presented during discovery, are unsigned and have the tax preparer's identification redacted—is insufficient to support a motion for summary judgment. *See Rocha*, 44 F. Supp. 3d at 348–50; *Monterossa v. Martinez Rest. Corp.*, No. 11 CIV. 3689 (JMF), 2012 WL 3890212, at *4 (S.D.N.Y. Sept. 7, 2012) (denying summary judgment in similar circumstances and noting that "there is good reason to be cautious in relying on Defendants' tax returns because . . . the submitted returns are unsigned and unaccompanied by a statement or affidavit of the tax preparer"). Because issues of material fact remain to be decided, summary judgment is inappropriate on the issue of whether enterprise coverage applies to Aru Sushi.

---

[4] Plaintiffs have presented Aru Sushi's menu as evidence. The menu offers yellowtail snapper. The Court takes judicial notice of the fact that "[m]ost yellowtail snapper caught in the U.S. originates from the Florida Keys and southeastern Florida, though they can range from North Carolina to Brazil." *Snapper, Yellowtail*, MONTERREY BAY AQUARIUM SEAFOOD WATCH, http://www.seafoodwatch.org/seafood-recommendations/detail/113/snapper-yellow-tail-wild-us-gulf-of-mexico-and-south-atlantic-aprion-virescens?type=yellow-tail&q=Snapper,%20Yellow-tail (last visited June 25, 2015, 10:59 AM EST). Aru Sushi's yellowtail snapper could not have been caught in New York and, therefore, must have traveled in interstate commerce. Plaintiffs have satisfied the "commerce" prong at this stage.

C.      Retaliation

The FLSA protects an employee from, among other things, being fired as a result of a

protected FLSA complaint.  29 U.S.C. § 215(a)(3) (forbidding employers "to discharge or in any

other manner discriminate against any employee because such employee has filed any complaint

or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has

testified or is about to testify in such proceeding").  "To fall within the scope of the

antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable

employer to understand it, in light of both content and context, as an assertion of rights protected

by the statute and a call for their protection.  This standard can be met . . .  by oral complaints, as

well as by written ones."  *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325,

1335 (2011).

Defendants contend that they cannot be liable for retaliation because there is no evidence

from which a reasonable juror could draw the conclusion that they knew about Qing Lin's instant

lawsuit.  According to Defendants, Qing Lin's deposition testimony is inconsistent, and could

not support his claim for retaliation.  But even Defendants' version of the story and their reading

of Qing Lin's deposition testimony provide some evidence that they knew of complaints.

According to Defendants, Qing Lin claims that he was ultimately fired—it appears that he went

through several rounds of being told "you're fired" and then continuing to work—because he

refused to sign "papers" in exchange for $500.  (Shi Decl. Ex. E. 40:18–41:3.)  A reasonable

juror could conclude that these papers were a release agreement, and that the $500 was an offer

to settle the instant claims.  *Defendants'* reading of Qing Lin's testimony, therefore, is

circumstantial evidence of knowledge of a lawsuit.  In other parts of Qing Lin's testimony, he

testifies outright that he was simply fired for bringing the instant suit.  (*Id.* 41:6–41:7 ("After I

brought the lawsuit, after I sue him he told me to leave.").)  Because Defendants' only ground for summary judgment on this claim was their putative lack of notice of the complaint, and because a reasonable juror could conclude that they did have notice of the complaint, summary judgment on Qing Lin's retaliation is claim is denied.

### D.     Successor Liability

Finally, Defendants move for summary judgment on the issue of successor liability for Abace Sushi.  Generally, when a corporation buys the assets of another corporation—even substantially all of the selling corporation's assets—the buyer does not assume the liabilities of the seller.  There are, though, circumstances under which the successor corporation does assume the liabilities of the predecessor.  "The Second Circuit has not delineated what the proper test for successor liability should be in the FLSA context." *Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 392, 400 (S.D.N.Y. 2012) (Oetken, J.).  But this Court has previously held that, in light of existing Supreme Court law, the proper course is to apply the "substantial continuity" test, under which a successor corporation is held liable if "(1) the successor had notice of the claim before acquisition; and (2) there was substantial continuity in the operation of the business before and after the sale." *Id.* (quoting *Rowe Entm't, Inc. v. William Morris Agency, Inc.*, No. 98-CV-8272, 2005 WL 22833, at *79 (S.D.N.Y. Jan. 5, 2005) (internal quotation marks omitted)).  For the same reasons, the Court adopts that test here.

Defendants move for summary judgment only on the first ground, arguing that Abace Sushi and its management did not have notice of the claim against Aru Sushi.  They appear to concede, for the purposes of this motion at least, that a reasonable juror could conclude that there was substantial continuity in the operation of the two restaurants.  Defendants' only arguments on the first point are that (1) they could not have known of the lawsuit at the time the restaurant

8

was sold because the lawsuit had not yet been filed at that time, and (2) the warranty in the bill of sale precludes the conclusion that Abace Sushi knew of the claim. (Defendants' Memorandum of Law, at 22–23.) But the test requires only that they know of a *potential* claim. *Battino*, 861 F. Supp. 2d at 405–06 (collecting cases for the proposition that knowledge of potential, rather than actual, liability is what is required in this context). The warranty covers only actual litigation. And as to Defendants' actual knowledge of the suit at the time of the transaction, the record is less than clear. According to Plaintiffs, Defendants failed to produce the bill of sale during discovery, producing it instead only after the close of discovery and immediately before the briefing of the instant motion. (Plaintiffs' Memorandum of Law, at 17.) Plaintiffs, accordingly, ask that the Court strike it from the record. (*Id.*) But even if the Court considers the bill of sale, it does not rule out the possibility that Defendants knew of their *potential* liability in advance of the sale. Plaintiffs offer circumstantial evidence that Defendants executed the transaction for no reason other than to avoid liability—according to Plaintiffs, the restaurants were essentially the same, the new owner did not know basic facts about the operation of the business, and the new owner could not locate the bill of sale. (*See Id.* Ex. G., Deposition Transcript of Ping Zhu Yu 37:11–23.) These facts are not consistent with being a bona fide owner of a business. As such, a reasonable juror could conclude that Aru Sushi was sold to avoid liability, not as part of a bona fide transaction. Summary judgment is accordingly denied.

**III.    Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment is DENIED.

The Clerk of Court is directed to close the motion at docket number 31.


SO ORDERED

Dated:  June 29, 2015
        New York, New York

_____
                    J. PAUL OETKEN
                United States District Judge